OPINION
Robert Simmons is appealing from the denial by the trial court of his presentence motion to vacate his guilty pleas.
The facts of the case and the reasoning of the trial court in its refusal to vacate Simmons' guilty pleas are fully and concisely set forth in the decision of the court by the Hon. Michael T. Hall, as follows:
 INTRODUCTION This matter is before the Court on Defendant's Motion to Withdraw Plea filed June 14, 1999. The State filed a response on August 3, 1999. An Evidentiary Hearing was conducted on October 27, 1999.
 Robert Simmons was indicted by the Montgomery County Grand Jury on February 22, 1999, for two (2) counts of Felonious Assault felonies of the first degree, each with Firearm Specifications. The first specification was pursuant to Ohio Revised Code § 2941.145 (requiring a three (3) year mandatory term) and the second was pursuant of Ohio Revised Code § 2942.146 (discharging a firearm from a motor vehicle requiring a five (5) year mandatory sentence), and one (1) count of Possession of Criminal Tools (the firearm), a felony of the fifth degree. The entries and docket indicate that the matter was set for a Scheduling Conference on April 6, 1999, and that event was rescheduled at the request of Counsel for the Defendant until April 20, 1999. Also on April 6, 1999, a co-defendant, Michael T. Perry, entered a negotiated plea and as part of that agreement, Mr. Perry was to testify against co-defendant Robert Simmons.
On April 20, 1999, an additional one (1) week continuance was granted at the request of Counsel for the Defendant.
On April 27, 1999, a two (2) week continuance was requested and granted. The Motion and Entry filed April 28, 1999, indicates "Counsel needs an additional two (2) week (sic) to complete the negotiations for plea(s) and the pros. attorney also agrees." The matter eventually came on for a plea on May 25, 1999. The court has reviewed the transcript of the plea, the transcript having been filed on July 23, 1999.
WITNESSES' TESTIMONY
The Defendant presented the testimony of Kathleen Hart, a clinical neuropsychologist. She described clinical neuropsychology as a sub-specialty of neuropsychology involved in assessing individuals with brain injuries. Kathleen Hart is a professor at Xavier University. She has been licensed in the State of Ohio since 1987, and also has a private practice. She is a member of various groups and associations within her profession.
Ms. Hart interviewed the Defendant, Robert Simmons, on July 20, 1999, for approximately two and a half hours. Furthermore, she reviewed Defendant's Exhibit A, being extensive medical records from the Defendant's hospitalization in July 1993, as the result of a motorcycle accident. From interviewing the Defendant, Ms. Hart learned the extent of substance abuse of the Defendant and also the nature of his 1993 injuries. She did not administer any tests but gained background for evaluating the Defendant. Ms. Hart testified that the Defendant may suffer from memory impairment, difficulties with problem solving and language difficulties. With respect to reconciling her testimony with the statement in the transcript at the time of the plea that the Defendant understood those proceedings, Ms. Hart indicated we "don't really know" whether a person in the Defendant's position understood and adequately waived the options available to him. Moreover, she could not state with any degree of certainty that the Defendant's condition, as she perceived it, affected his plea. She did state that it was "highly possible" or maybe even "probable" that there would be cognitive changes in the Defendant that "might be relevant." She further testified that his condition at the time of her examination would be [sic] same as on May 25, 1999, in that his rehabilitation from whatever condition he would have sustained in the accident of 1993, would have reached its greatest degree of recovery in the first one or two years after the injury.
Robert Simmons testified that he is thirty-five years of age, lives in Fairborn, Ohio, and is employed doing floor sanding and refinishing. He indicated that he never talked to his attorney, Joe Fodal, in depth about the case. The Defendant stated that he was first aware of the potential of the plea on the ride to court from Fairborn with Mr. Fodal on May 25, 1999. After sitting in court the Defendant spoke to Mr. Fodal in the hallway who told him that he could get up to 24 years and they reviewed some pictures. He discussed with Mr. Fodal that a plea agreement would include five (5) mandatory years before eligibility for Judicial Release, and Mr. Fodal told him that entering a plea was the way to go. He said he talked to Mr. Fodal for eight (8) or nine (9) minutes before making a decision. At the time of the plea he remembers the Judge asking him whether he was satisfied with Mr. Fodal, and although he was not, he told the Judge that he was because he was afraid to say no. After the May 25th plea, he reported to the office of new counsel approximately four (4) days later for advice and representation. The Defendant admitted that the photographs were important to him because they showed bullet holes in a vehicle and he had not seen them prior to the hallway conversation on the day of the plea. The Defendant indicated Mr. Fodal never sat and talked with him about going to trial, never shared that the co-defendant's attorney, Mr. Henke, had an investigator, and never shared with the Defendant that Michael Perry, the co-defendant, would testify against him.
In his testimony, the Court observed that the Defendant was clearly able to remember the sequence of events at the Preliminary Hearing, was clearly able to testify as to his perception of the representation and the Court appearances, and was clearly able to relate the potential penalties facing him.
The Defendant's prior attorney, Joe R. Fodal, was called to testify. He indicated that he received his license to practice law in 1972 and practiced from 1972 to 1989. From January 1990, to the end of 1995, he was a Judge in Fairborn Municipal Court. For the last four (4) years, he has again been in the private practice of law. He indicated he represented persons with felonious assault charges probably a half a dozen times in the last four (4) years since returning to private practice and that he was familiar with the law on sentencing.
With regard to the representation of Robert Simmons, Mr. Fodal indicated that there was a full Preliminary Hearing at which the Defendant was present. Soon thereafter, he had a chance to talk with the Defendant about the case. They remained in close contact and the Defendant asked a lot of questions and seemed to be a good client. Mr. Fodal spoke to him on numerous occasions. Mr. Fodal indicated that they talked about a plea throughout the pendency of the case. He specifically denied that they only talked about a plea once in the hallway before the actual plea and estimated that they talked about a plea at least a dozen times. Mr. Fodal indicated he gave Rob a ride to court almost every time they had to appear, and on those occasions they talked about the case on the way to the courthouse from Fairborn. At the time of the plea, Mr. Simmons did not request another continuance and Mr. Fodal did not feel that he was being rushed. During the course of the representation, Mr. Fodal told the Defendant that Mr. Henke had an investigator and that he had talked with Mr. Henke numerous times and shared the result of the investigation. Mr. Fodal indicated he told Mr. Simmons that Mr. Perry was going to testify against Mr. Simmons, he had shared this with the Defendant at least three (3) to four (4) weeks before the plea date for Mr. Simmons.
At the time of the plea, Mr. Fodal did not notice anything for which he should stop the proceedings. He indicated that he had represented and was representing Mr. Simmons on an unrelated matter and that Mr. Simmons was an intelligent, excellent client, and that Mr. Fodal welcomed his questions. However, it was apparent that the Defendant dreaded the appearance in court because of the serious nature of the charges. Mr. Fodal indicated he became familiar with the Defendant's medical history in 1998, and from Mr. Fodal's observations, he did not think that was significant or have any relevance during the pendency of the representation in 1999. Mr. Fodal indicated that there were no motions made concerning Defendant's mental abilities, no experts were retained and no Motion to Suppress was filed. Mr. Fodal indicated that the conference with the Defendant in the hallway before the plea was about 20 minutes long. Mr. Fodal admitted that on the way to the courthouse he told the Defendant that there was no way that they would enter a plea unless they had seen the photographs which the Defendant had not previously observed. Mr. Fodal first learned that the Defendant was dissatisfied with his representation shortly before the June 22nd Sentencing Hearing when he attempted to contact the Defendant to move the sentencing due to a scheduling conflict.
The Court further notes that it was represented by new counsel for the Defendant that after contacting his new attorney, the Defendant was encouraged to participate in interviews with the Montgomery County Probation Department. A Presentence Investigation was completed and presented to the Court, and that fact was made part of the record of the hearing, although the Presentence Investigation report has not been reviewed by the Court at the request of the Defendant.
ANALYSIS
The Defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct the hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. See e.g. State v. Xie (1992), 62 Oh. St. 3rd 521, 584 N.E.2d 715. The decision to grant or deny a pre-sentence motion to withdraw a guilty plea is within the sound discretion of the trial court. Xie, supra. Pre-sentence motions to withdraw a guilty plea is within the sound discretion of the trial court. Xie, supra. Pre-sentence motions to withdraw a plea should be liberally allowed.State v. Kordelewski (March 8, 1996), Montgomery App. No. 15425, Unreported.
 "However, this does not mean that the Defendant has an absolute right to withdraw his plea before sentencing; the decision is still within the discretion of the court. State v. Virgi (1948), 84 Ohio App. 15, 81 N.E.2d 295."
 "To withdraw the plea before sentencing, the defendant must still have a legitimate basis for his withdrawal." Kordelewski, supra at 4.
In the present case all the evidence clearly indicates that the Defendant was represented by competent and effective counsel, Joe Fodal. In fact, there is no evidence to the contrary. Moreover, Mr. Simmon's plea hearing before the Honorable John W. Kessler on May 25, 1999, demonstrates a full and proper Criminal Rule 11 Hearing.
The Court also finds that there is a distinct difference in the recollection of the Defendant and Attorney Fodal concerning critical elements about his plea. The Defendant claims to had been rushed when his then Counsel denies there was a rush on the date of the plea. The Defendant claims to not have fully understood that he was going in [sic] enter a plea that day when his Counsel indicated that plea discussions had been ongoing for several weeks. The Defendant stated that Mr. Fodal never talked with him at length about the case and no one informed him of the findings of the co-defendant's investigator. This too is directly contrary to the testimony of Attorney Fodal. The Court believes that Defendant's current recollection of these events is a convenient confusion.
Most importantly, the Defendant's presentation fails to demonstration [sic] any reason for withdrawal of his plea, other than he has had a change of heart. Although the Defendant's presentation of Kathleen Hart, might arguably show that the Defendant is slower at problem solving than most, the testimony of Mr. Fodal about the intelligence of his client is certainly contrary to the Defendant's assertion. Finally, the motion to withdraw was filed only after the Defendant participated in a presentence investigation by the Adult Probation Department.
CONCLUSION
The Court finds that the Defendant has failed to demonstrate an adequate basis for the plea to be withdrawn. The accused was represented by competent counsel, he was afforded a full Criminal Rule 11 Hearing and he has failed to demonstrate an adequate reason to withdraw the plea. Accordingly, the Motion to Withdraw Plea filed June 14, 1999, is OVERRULED.
Docket 24.
The appellant's sole assignment of error is that the trial court committed an abuse of discretion by denying appellant's petition to vacate the guilty plea [sic].
At the outset, we must note, as we did during oral argument, that Simmons runs a great risk on this appeal because, if he wins it, the case will be remanded, and he faces the possibility of convictions on all counts and a possible twenty-four year incarceration. There would no longer be a plea bargain which bestowed on Simmons only a mandatory five-year incarceration. However, we will save Simmons from this risk because we will affirm. In so affirming, we adopt and approve the decision of the trial court as our own. The trial court explicitly made a credibility call, discounting almost entirely Simmon's testimony at the hearing on the motion to vacate his plea.
As we have stated many times before, (See e.g., City of Dayton v.Ronald J. Versic (March 15, 1996), Montgomery App. No. 15223, p. 6, unreported) it is settled law that credibility is for the trier of the facts and "where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Myers v.Garson (1993), 66 Ohio St.3d 610, 614. As the Supreme Court of Ohio observed in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, at 80: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Such deference is particularly important in light of research that indicates that as much as "ninety percent of the total meaning of testimony is interpreted through non-verbal behavior, such as voice inflection, hand gestures, and the overall visual demeanor of the witness. The witness' choice of words accounts for only ten percent of the meaning of their testimony." State v. Evans (1993),67 Ohio St.3d 405, 410-411. The demeanor, attitude, and credibility of witnesses does not translate well to the written page. Davis v.Flickinger (1997), 77 Ohio St.3d 415, 418.
The appropriate standard of review of a trial court's denial of a motion to vacate a guilty plea is abuse of discretion. The finding of abuse of discretion requires that the court's attitude be clearly shown as to being unreasonable, arbitrary, or unconscionable. State v. Posta
(1988), 37 Ohio App.3d 144, 524 N.E.2d 920. For purposes of determining abuse of discretion in such a case, this court has adopted the rule first set forth by the Court of Appeals for Cuyahoga County in State v.Peterseim (1980), 68 Ohio App.2d 211, 22 O.O.3d 341, 428 N.E.2d 863, summarized in a headnote as follows:
 "A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request."
See State v. Barnett (1991), 73 Ohio App.3d 244, 250.
The record, including the transcript of the hearing, clearly shows that all four of the above stated factors are present here. As to the first factor, which Simmons contests, the trial court clearly found Simmons' experienced counsel, Joe Fodal, to be competent and effective, and that Mr. Simmons was afforded a very complete and full hearing, pursuant to Crim.R. 11. Furthermore, the 113-page transcript of the motion hearing, which we have read, amply demonstrates that Simmons was given a complete and impartial hearing on his motion, and the trial court's opinion, which we have adopted as our own, demonstrates that the court gave full and fair consideration to the plea withdrawal request.
We can find no abuse of discretion on the part of the trial court.
The sole assignment of error is overruled, and the judgment is affirmed.
 __________________________ FREDERICK N. YOUNG, J.
WOLFF, J. and FAIN, J., concur.